UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM L. CURTIS,

          Petitioner,

    v.

UNITED STATES OF AMERICA,

          Respondent.

Case No. 03-cv-4074-JPG

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on petitioner William L. Curtis's ("Curtis") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The government has responded to the motion (Doc. 16), and Curtis replied to that response (Doc. 17). In the wake of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), the Court allowed Curtis to amend his petition (Doc. 18). The government responded to the amendment (Doc. 20), and Curtis replied to that response (Doc. 21). The Court also considers Curtis's motions to expand the record (Doc. 4) and for a hearing (Docs. 5 & 22).

Curtis's motion to expand the record seeks to add an exhibit to his § 2255 motion that he inadvertently forgot to attach to the motion. The Court will grant the motion (Doc. 4) and will consider the exhibit in its review of the pending § 2255 motion.

I.    **Background**

In June 1999, Curtis was indicted on one count of conspiring to distribute crack cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (count 1) and one count of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) (count 3). A superseding indictment added another count of distributing crack, but that count was dismissed before trial. In addition, the government filed an information pursuant to 21 U.S.C. § 851 based on Curtis's two prior felony drug convictions. Curtis's case was tried to a jury in April 2000. At trial, Curtis was represented by attorney John Abell ("Abell"). On April 5, 2000, the jury found Curtis guilty on both counts. The indictment and verdict forms contained no specific drug amounts.

On February 9, 2001, the Court held a sentencing hearing at which Curtis was represented by Christian J. Baril ("Baril").[1]  At sentencing, the Court found by a preponderance of the evidence that Curtis's relevant conduct was 500 grams to 1.5 kilograms of crack cocaine, which under United States Sentencing Guideline[2] ("U.S.S.G.") § 2D1.1 yielded a base offense level of 36.  The Court also found by a preponderance of the evidence that Curtis obstructed justice by exhibiting reckless conduct during flight that created a substantial risk of serious bodily injury to others and that his offense level should therefore be increased by two points under U.S.S.G. § 3C1.2, yielding a total offense level of 38.  The Court further found that Curtis's criminal history category was II.  The sentencing range for an offense level of 38 and a criminal history category of II is 262 to 327 months in prison.  The Court sentenced Curtis to serve 327 months in prison on each count to be served concurrently.

Curtis appealed to the Seventh Circuit Court of Appeals, where he was represented by new counsel, Angela R. Hardy ("Hardy").  On appeal, Hardy argued that the Court erroneously admitted evidence of Curtis's prior bad acts and erroneously denied Curtis's motion for a new trial in light of alleged newly discovered evidence, a blank tape on which the government had attempted to record a drug transaction allegedly involving Curtis.  Curtis also advanced other arguments in a *pro se* brief.  The Court of Appeals affirmed Curtis's conviction and sentence on February 11, 2002, and issued its mandate on April 15, 2002.  *United States v. Curtis*, 280 F.3d 798 (7th Cir. 2002).  Specifically, the Court of Appeals found that the Court did not err in admitting evidence of Curtis's prior bad acts or in finding that the alleged newly discovered evidence Curtis relied on in his motion for a new trial was neither newly

---

[1]Curtis's sentencing occurred before the Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005).  The impact of those decisions on Curtis's case is discussed later in this order.

[2]Unless otherwise noted, the references to the guidelines in this order are to the 1998 United States Sentencing Guidelines Manual.

discovered nor material to Curtis's defense.  *Id.* at 802-03.  Curtis did not petition the United States Supreme Court for a writ of *certiorari*.

Curtis filed this timely § 2255 motion on April 14, 2003.  In it, Curtis asks the Court to vacate his conviction and sentence because his counsel at trial, at sentencing and on appeal were constitutionally ineffective.  Specifically, he alleges that his trial counsel, Abell, was deficient because he:

1. failed to object to the government's evidence of Curtis's prior bad acts on the grounds that it was inadmissible under Federal Rule of Evidence 404(b) (ground 2 in Curtis's motion) and that it improperly amended the indictment (ground 3 in Curtis's motion);

2. failed to request a limiting instruction on the jury's use of Rule 404(b) evidence (ground 4 in Curtis's motion);

3. failed to request a jury instruction on a mere buyer/seller instruction relationship (ground 5 in Curtis's motion); and

4. failed to obtain from the government a statement given by Lester Barr prior to the trial (ground 7 in Curtis's motion).

He further alleges that, even if no single counsel error amounted to ineffective assistance, the cumulative effects of all trial counsel's errors established this constitutional deficiency (ground 8 in Curtis's motion). Curtis alleges that his sentencing counsel, Baril, was ineffective for failing to object to the manner in which the Court determined Curtis's relevant conduct (ground 6 in Curtis's motion) and in failing to argue that the disparity between the crime charged and the sentence given violated his due process rights (ground 9 in Curtis's motion).  Finally, he alleges that his appellate counsel, Hardy, was ineffective because she:

1. failed to argue that the evidence was insufficient to convict Curtis of conspiracy (ground 1 in Curtis's motion);

2. included certain erroneous facts in her brief to the Court of Appeals on the issue of the propriety of admitting evidence under Rule 404(b) (ground 2 in Curtis's motion); and

3. failed to make a *Brady* argument based on the failure of the government to disclose Lester Barr's statement prior to trial (ground 7 in Curtis's motion).

Curtis's amendment advances an additional argument based on *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

In response to Curtis's § 2255 motion, the government argues that the Court should not consider some of Curtis's arguments because they were already raised on direct appeal and there has been no changed circumstances of law or fact since then.  It also argues on the merits that none of Curtis's three counsel were constitutionally ineffective.

**II.      § 2255 Standard**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.  However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).  Relief under § 2255 is available only if an error is "constitutional, jurisdictional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (quotations omitted).  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

A § 2255 motion does not substitute for a direct appeal.  A defendant cannot raise in a § 2255 motion constitutional issues that he could have but did not raise in a direct appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice.  *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000); *Prewitt*, 83 F.3d at 816.  A defendant cannot raise in a § 2255 motion nonconstitutional issues that he failed to raise on direct appeal regardless of cause and prejudice.  *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000).

4

Neither is a § 2255 motion necessarily a second chance at a successful appeal.  The Court may refuse to consider issues in a § 2255 motion that a defendant raised on direct appeal where there are no changed circumstances of fact or law.  *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum.  They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding.  *Massaro*, 538 U.S. at 504-05;  *Fountain*, 211 F.3d 433-34.  In addition, the district court before which the original criminal trial occurred is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and the potential prejudice that stemmed from that performance. *Massaro*,  538 U.S. at 504-05.[3]  For these reasons, the Court finds that Curtis has not procedurally defaulted his ineffective assistance of counsel claims.

## III.    Analysis

The Court finds that Curtis has not presented any evidence or argument meriting either a hearing or relief under § 2255.  As noted earlier in this order, Curtis asks the Court to vacate his conviction on the basis of several alleged instances of ineffective assistance of counsel.  A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.

---

[3]The Seventh Circuit used to adhere to the position that where the claimed instances of ineffective assistance of counsel are clearly and completely reflected within the district court record and none of those instances turn on events outside the record and where the defendant had new counsel on appeal that could have vigorously argued trial counsel's ineffectiveness, there is no fundamental miscarriage of justice, and the defendant must show cause and prejudice before he is allowed to raise the issue in a § 2255 motion.  *See McCleese v. United States*, 75 F.3d 1174, 1178 (7th Cir. 1996).  The Supreme Court rejected this position in *Massaro* and held that ineffective assistance of counsel may, but is not required to, be raised for the first time in a § 2255 motion even if the alleged conduct is fully reflected in the record and the defendant had new counsel on appeal.  *Massaro*, 538 U.S. at 504.

*Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). The plaintiff's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted).

To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to specific acts or omissions of his counsel. *Fountain*, 211 F.3d at 434 (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the range of professionally competent assistance. *Id.* Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Id.* The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990). To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434.

The Court will address the performance of each of Curtis's three counsel separately.

A.    Trial Counsel

For the following reasons, the Court finds that Abell was not constitutionally ineffective in relation to Curtis's trial.

1.    Evidence of Prior Bad Acts

a.    Admissibility (Ground 2)

Curtis argues that Abell was ineffective for failing to object to witnesses who testified about Curtis's activities prior to the dates of the alleged conspiracy in this case, August 1998 to May 5, 1999. Specifically, he points to eleven witnesses who testified about his prior bad acts from 1997 and early 1998. He admits that the Court of Appeals reviewed the testimony of four of those witnesses, and three tapes admitted in conjunction with their testimony, under the plain error standard and found no plain

error.  Curtis believes, however, that had counsel objected at trial and had the Court of Appeals then been required to review the evidence's admission for an abuse of discretion, the evidence would not have been admitted, and he would not have been convicted or his conviction would have been overturned.  The government maintains that the testimony from all eleven people was admissible under Rule 404(b).

The Court finds that Abell was not constitutionally deficient for failing to object to evidence of Curtis's prior bad acts because such an objection would have been overruled and would not have had a reasonable probability of changing the result of the trial.  As the Court of Appeals noted in Curtis's appeal, although evidence of a defendant's prior bad acts is not admissible to prove that a defendant acted in conformity therewith, it is admissible under Federal Rule of Evidence 404(b) if it:

> i) is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged;  ii) shows that the other act is similar enough and close enough in time to be relevant to the matter in issue;  iii) is sufficient to support a jury finding that the defendant committed the similar act;  and iv) has probative value not substantially outweighed by the danger of unfair prejudice.

*United States v. Curtis*, 280 F.3d 798, 801 (7th Cir. 2002) (further quotations and citations omitted).  The Court of Appeals has already determined that the Court's admission of four of the witnesses' testimony satisfied all four prongs of this test.  *Id.* at 802.  That the Court of Appeals' review was under a plain error standard instead of an abuse of discretion standard does not alter the fundamental truth of its holding that admission was proper**.**

In addition, the testimony of the other witnesses regarding Curtis's other prior bad acts also satisfies this test.  The evidence was directed toward establishing Curtis's knowledge and intent to conspire to distribute crack cocaine.  Like the evidence considered by the Court of Appeals, that testimony described drug dealings similar enough and close enough in time – within two years of the charged conspiracy –  to be relevant.  It was also sufficient to support a jury finding that Curtis committed those bad acts.  Finally, its probative value regarding Curtis's knowledge and intent, even without a limiting instruction, outweighed any unfair prejudicial effect when viewed in combination with the trial

testimony as a whole, which overwhelmingly supported his conspiracy conviction. *See Curtis*, 280 F.3d at 802. Any objection from Abell regarding the admissibility of this evidence would have been rejected by both this Court and the Court of Appeals. For this reason, the Court finds that Abell was not deficient for failing to make this losing argument and that Curtis suffered no prejudice as a result.

   b. <u>Constructive Amendment of Indictment (Ground 3)</u>

   Curtis believes Abell was constitutionally ineffective for failing to object to the government's constructive amendment of the indictment. He believes that the evidence of his prior bad acts discussed in the foregoing section, in the absence of a limiting instruction, effectively expanded the dates of the charged conspiracy to include the dates of his prior bad acts. The government argues that the evidence of Curtis's prior bad acts was proper Rule 404(b) evidence and did not broaden the basis for conviction beyond that charged by the grand jury in the indictment.

   Constructive amendment of the indictment violates a defendant's Fifth Amendment right to indictment by a grand jury. *United States v. Trennell*, 290 F.3d 881, 887-88 (7th Cir. 2002). An indictment is constructively amended when the Court or the government "broadens the possible bases for conviction beyond those presented by the grand jury" and only occurs if the charged crime is materially different or substantially altered at trial, not where the Court's description of the indictment alters the terms in an insignificant way. *Id.* at 888. "The introduction of evidence of pre-conspiratorial events does not by itself create a constructive amendment to the indictment." *United States v. Cusimano*, 148 F.3d 824, 829 (7th Cir. 1998). Furthermore, Rule 404(b) evidence, "because ultimately offered to prove guilt of the charged offense, effects no constructive amendment of the indictment and therefore does not infringe on a defendant's Fifth Amendment rights." *United States v. Rosario-Diaz*, 202 F.3d 54, 71 (1st Cir. 2000).

   In this case, Abell was not deficient for failing to object to a constructive amendment of the indictment. The crime charged was no different than the crime of which Curtis was convicted. Although

8

the jury was not given a limiting instruction on the evidence of Curtis's prior bad acts, the time frame of the conspiracy was clearly laid out in the indictment, which the jury had during its deliberations.  The jury was further instructed that in order to convict Curtis of conspiracy, it had to find that the government had to prove beyond a reasonable doubt that the conspiracy *as charged in count 1* existed.  There was simply no amendment, constructive or otherwise.  In light of the propriety under Rule 404(b) of the admission of Curtis's prior bad acts to prove the crime charged in the indictment and the jury instruction directing the jury to the indictment itself, Abell was not deficient for failing to argue that the prior bad acts altered the charged crime.  Furthermore, even if the Rule 404(b) evidence could have been construed to have broadened the time frame of the charged conspiracy, this is not the kind of material or substantial change that would impermissibly amend the indictment.  The same crime is charged; only the beginning point is different.

Furthermore, Curtis has not shown that, had Abell objected to a constructive indictment, there is a reasonable probability that the result of the proceedings would have been different.  As discussed earlier, the evidence of Curtis's prior bad acts was admissible to prove the crime charged, and there was overwhelming additional evidence to support that conviction for the time frame alleged in the indictment. For this reason, Curtis has failed to show prejudice from Abell's failure to make an objection.

c.    Limiting Instruction (Ground 4)

Curtis argues that Abell was ineffective because he failed to request a jury instruction limiting the jury's consideration of Rule 404(b) evidence to things other than his propensity to commit a crime. Curtis believes that the jury in this case was improperly allowed to consider evidence of his prior bad acts as proof that he acted in conformity therewith and committed the conspiracy in count 1.

Jury instructions are proper if they are adequately supported by the record and are fair and accurate summaries of the law.  *United States v. Stott*, 245 F.3d 890, 903(7th Cir. 2001);  *United States v. Lanzotti*, 205 F.3d 951, 956 (7th Cir. 2000);  *United States v. Wimberly*, 79 F.3d 673, 676 (7th Cir. 1996).

However, a defendant is only entitled to an instruction on a particular theory of defense if "1) the instruction is a correct statement of the law, 2) the evidence in the case supports the theory of defense, 3) that theory is not already part of the charge, and 4) a failure to provide the instruction would deny a fair trial." *United States v. Mutuc*, 349 F.3d 930, 935 (7th Cir. 2003) (citing *United States v. Chavin*, 316 F.3d 666, 670 (7th Cir. 2002)).

It is clear that Abell should have requested a limiting instruction and was deficient for failing to do so, for the Court can conceive of no downside to making such a simple request when such an instruction is obviously supported by the evidence.  However, Curtis has not established that, had Abell made such a request and had the Court given the jury a limiting instruction, there would have been a reasonable chance that the result of the proceedings would have been different.  Furthermore, he has not established that he was denied a fair trial because the instruction was not given.  As the Court has noted previously in this order, there was substantial direct and circumstantial evidence other than the Rule 404(b) evidence at trial that Curtis committed the conspiracy charged in count 1.  Even if the Court had explicitly instructed the jury not to consider that evidence for Curtis's propensity to commit the crime of conspiracy but instead only to show his intent or purpose to commit the crime, there is simply no reasonable chance that the jury would have acquitted him or come to any result other than a conviction on count 1.  Curtis received a fair trial even without a limiting instruction.

### 2.   Buyer/Seller Instruction (Ground 5)

Curtis also believes that Abell was constitutionally ineffective for failing to request a buyer/seller instruction in light of the evidence that Curtis's sales to others were not of any duration and that he did not have any stake in the profits made by those to whom he sold crack cocaine.  He believes that the jury should have been instructed that a buyer-seller relationship does not constitute a conspiracy.  The Court presumes that Curtis would have been satisfied with Seventh Circuit Court of Appeals Pattern Instruction 6.12:

The existence of a simple buyer-seller relationship between a defendant and another person, without more, is not sufficient to establish a conspiracy, even where the buyer intends to resell [the crack cocaine.]  The fact that a defendant may have bought [crack cocaine] from another person or sold [crack cocaine] to another person is not sufficient without more to establish that the defendant was a member of the charged conspiracy.

In considering whether a conspiracy or a simple buyer-seller relationship existed, you should consider all of the evidence, including the following factors:
  (1)  Whether the transaction involved large quantities of [crack cocaine];
  (2)  Whether the parties had a standardized way of doing business over time;
  (3)  Whether the sales were on credit or on consignment;
  (4)  Whether the parties had a continuing relationship;
  (5)  Whether the seller had a financial stake in a resale by the buyer;
  (6)  Whether the parties had an understanding that the [crack cocaine] would be resold.

No single factor necessarily indicates by itself that a defendant was or was not engaged in a simple buyer-seller relationship.

Curtis has failed to allege anything that shows Abell was deficient for failing to request such an instruction or that Curtis suffered any prejudice as a result.  The instruction was simply not supported by the evidence.  The overwhelming evidence at trial demonstrated that Curtis's crack cocaine activities were pursuant to an agreement with his codefendant and others to distribute dealer amounts of crack cocaine in southern Illinois, sometimes collaborating to make the crack, agreeing to divide up the sales territory each would cover or agreeing to use the residences of others to facilitate the sales.  There is simply no way a reasonable jury could find based on the evidence that Curtis's sales of crack cocaine were not a part of a larger conspiratorial scheme.

Furthermore, even if Abell had requested and the Court had elected to give a buyer/seller instruction, there is no reasonable probability that the result of the proceedings would have been different.  It is easy to determine from a quick look at the factors that the jury would have been instructed to consider in a buyer/seller instruction that the evidence overwhelmingly supports a conspiracy finding, not a buyer/seller relationship.  The evidence shows that for at least two years Curtis brought dealer quantities of crack cocaine from Chicago to southern Illinois on a regular basis, nearly every weekend, and

11

remained in the area until it was sold.  The evidence shows that there was a standard way of initiating a drug purchase from him – via pager – and that he regularly used the same locations and methods to carry and sell the drugs.  While there was no substantial evidence that Curtis sold on credit or consignment – in fact it was his standard business practice not to –  there was much evidence that he had a continuing relationship with the drug dealers with whom he worked and gained financially from their success because he was then able to sell them more drugs for further distribution.  There was further evidence that he consciously divided sales territory with another dealer to whom he sold crack cocaine, mentored that dealer regarding his drug distribution activities, actively collaborated with others to transport crack cocaine from Chicago to southern Illinois and, if necessary, to manufacture it in this region, and was assisted in other ways by other individuals for the purpose of facilitating his drug dealing activity.  The evidence clearly establishes much more than a mere buyer/seller relationship.  Curtis has not convinced the Court that a reasonable jury could have found Curtis guilty of selling crack cocaine but not of conspiring to sell it.  There is simply no reasonable probability that, had a buyer/seller instruction been given, the results of the proceedings would have been any different.  Because Curtis was not prejudiced by Abell's failure to request a buyer/seller instruction, Curtis is not entitled to § 2255 relief on this basis.

3.    Lester Barr Statement (Ground 7)

Curtis believes Abell was ineffective for failing to uncover the February 28, 2000, statement of government witness Lester Barr prior to his testimony at trial.  He believes that Barr's statement contained impeaching evidence that Abell should have discovered before trial began.  The government maintains that Abell asked for Barr's statement before trial, which is all he was obligated to do, but that the statement the government provided to Abell did not contain the events about which Barr testified and was therefore not useful for impeachment.  Abell denies that he received the statement in discovery.  Barr's statement is attached to the government's response.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *Giglio v. United States*, 405 U.S. 150, 155 (1972), the prosecution has the duty to ensure that criminal trials are fair by disclosing evidence that is favorable to the defendant or that impeaches a government witness.  There is no doubt that a defendant is entitled to disclosure of all evidence that "would tend to exculpate" him, *Brady*, 373 U.S. at 88, and all evidence that casts doubt on the credibility of prosecution witnesses and is material to the outcome of the trial.  *See United States v. Bagley*, 473 U.S. 667, 676 (1985);  *Giglio*, 405 U.S. at 155; *see Rodriguez v. Peters*, 63 F.3d 546, 555 n.10 (7th Cir. 1995).  Evidence is material to the outcome of the trial if "its suppression undermines confidence in the outcome of the trial," *Bagley*, 473 U.S. at 678, because there is a "reasonable probability" that disclosure would bring about a different result at trial, *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).  *United States v. Hamilton*, 107 F.3d 499, 509 (7th Cir. 1997);  *United States v. Gonzalez*, 93 F.3d 311, 316 (7th Cir. 1996).  However, "[t]he materiality standard is not met by '[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial. . . .'"  *Hamilton*, 107 F.3d at 509 (quoting *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)).  *Brady* and *Giglio* do not require disclosure of "every possible shred of evidence that could conceivably benefit the defendant."  *Hamilton*, 107 F.3d at 509.

In this case, Abell sought discovery from the government, and the government represented to Abell that all discovery had been provided.  It is well within the realm of reasonable performance to rely on such representations from the government in the absence of any red flags that would alert the defense that government disclosure was not complete.  Curtis has not alleged that any such red flags existed such that reasonably competent counsel would have been alerted that there was more discovery to be had.  For this reason, Curtis has not alleged anything that would reveal Abell's performance as deficient.

Furthermore, the Court has reviewed Barr's trial testimony and the statement Curtis claims Abell should have found before trial and has determined that the statement is not *Brady* or *Giglio* material.  There is nothing in Barr's statement that would tend to exculpate Curtis and, in fact, the statement

13

contains much that actually inculpates him.  As for any inconsistencies between the statement and Barr's trial testimony, they are extremely minor and would not likely cast any serious doubt on Barr's credibility before the jury.  There is simply nothing material to the outcome of the trial in Barr's statement.  For this reason, even if Abell had discovered the statement prior to trial, there is no reasonable probability that the outcome of the trial would have been any different.  Relief under § 2255 is not warranted on this basis.

### 4.   Cumulative Error (Ground 8)

The Court finds that Curtis had not demonstrated a reasonable probability that, but for the foregoing alleged errors by counsel, even if considered in combination, the result of the proceedings would have been different.

For the foregoing reasons, the Court rejects completely Curtis's claim that he received ineffective assistance of counsel at trial.

### B.   Sentencing Counsel

For the following reasons, the Court finds that Baril was not constitutionally ineffective in relation to Curtis's sentencing.

### 1.   Manner of Determining Relevant Conduct (Ground 6)

Curtis argues that Baril was ineffective because he failed to object at sentencing to the use of (1) interview statements and trial testimony that set forth drug amounts that were different than amounts the same witnesses had set forth in prior statements and (2) statements from witnesses who did not testify and that were not supported by evidence.

As for the non-testifying witnesses, Curtis believes Baril should have objected to the reliability of the non-testifying witnesses' statements and objected to the Court's failure to resolve the conflicting statements and to make a specific finding as to each drug quantity allegation.  Curtis acknowledges that the Court did make a broad finding that certain trial witnesses were credible, but believes that such a finding was not specific enough. The government argues that Baril *did* object in written objections and

orally at the sentencing hearing twice to the conflicting witness statements and that the Court's finding were based on reliable information.

The Court finds that Baril was not deficient in his performance with respect to objecting to the Court's calculation of Curtis's relevant conduct. First, Baril made the objection Curtis says he should have made. Baril objected to the statements the Court used to find the relevant conduct, highlighting the trial impeachment of the witnesses who testified at trial and the discrepancies between the statements that witnesses gave at different times. Baril argued that these factors rendered the witnesses incredible and unreliable. The Court heard Baril's objections and made the finding that the witnesses who testified at trial were credible in their testimony. The Court acknowledged the impeaching evidence for each trial witness but based its credibility findings upon its observation of the witnesses at trial. It further explained to Curtis that discrepancies in statements and testimony were common in drug cases and were not significant because people often recall things better after they have had a chance to think more. The Court acknowledged the discrepancies but found that they were not material since the gist of the divergent statements was the same. Nevertheless, the Court gave Curtis the benefit of the inconsistent statements and, with the exception of one witness who presented vastly different but very compelling testimony at trial, held Curtis accountable for the lesser amounts included in the witnesses' pretrial statements. Those statements alone were sufficient to get Curtis well beyond the 500 gram threshold that earned him a base offense level of 36. Baril's efforts to discredit the witnesses who provided relevant conduct and his decision to forego challenging the Court's obviously sufficient credibility findings fell well within the range of professionally competent counsel.

In addition, Curtis suffered no prejudice from Baril's performance. As the Court noted above, the statements of the trial witnesses alone were more than sufficient to get Curtis into the 500 gram to 1.5 kilogram category for relevant conduct purposes, so Baril's failure to challenge other witness statements was harmless. More importantly, Curtis has not presented any specific evidence that Baril could have

presented to change the Court's mind about his relevant conduct.  When a § 2255 petitioner faults his attorney for failing to object and present evidence at trial or at sentencing, he bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence had a reasonable probability of changing the result.  *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005);  *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003), *cert. denied*, 541 U.S. 1055 (2004).  Thus, to prevail in his argument on this matter, Curtis must show what additional evidence Baril could have presented, other than the trial evidence he cited at the sentencing, to show that the statements upon which the Court's relevant conduct finding was based were not reliable.  Curtis has not alleged any such evidence and has only made vague accusations that witnesses were unreliable.  In the absence of any specific information that Baril could have presented to alter the relevant conduct calculation, the Court cannot say that he was deficient or that there was a reasonable probability that Curtis's sentence would have been different had Baril made some different objection.

2.   <u>Disparity Between Offense and Sentence (Ground 9)</u>

Curtis argues that Baril was ineffective because he failed to argue that his sentence based on a relevant conduct finding of more than 500 grams of crack cocaine violated his Fifth Amendment due process and Sixth Amendment jury trial rights.  He believes that counts 1 and 3 involved less than one gram of crack cocaine, which would have yielded a base offense level of 16, and that it violated due process to sentence him based on more than 500 grams of crack cocaine, which yielded a base offense level of 36.  He believes that Baril should have objected to the Court's relevant conduct finding on the grounds that Curtis did not receive fair warning of the amount of drugs for which he would be held accountable.  Curtis also argues that Baril should have asked the Court to make its relevant conduct using a higher standard of proof than the preponderance of the evidence because those findings created an "immense disparity in sentencing."

16

In response, the government notes that Curtis's statement that count 1 involved less than one gram of crack cocaine is not borne out by the record, which reflects a conspiracy to distribute far larger amounts of crack cocaine.  It argues that the indictment and information put Curtis on notice of the potential penalties for his crimes, and that, although there may be due process concerns in some instances where the preponderance of the evidence standard is used, in this case that was the appropriate standard of proof.

As for Curtis's argument regarding Baril's failure to object that Curtis did not receive proper notice of the potential sentence for his crimes, Curtis cannot establish either prong of the *Strickland* test. The indictment in this case clearly gave Curtis warning that he could be punished for conspiring to distribute even a trace of crack cocaine, which under 21 U.S.C. § 841(b)(1)(C) was up to 20 years in prison.  The information filed under 21 U.S.C. § 851 alerted Curtis to the fact that his maximum potential sentence under § 841(b)(1)(A) was increased to 30 years.  Thus, Curtis had fair warning that his sentence could be up to 30 years.  There simply was no basis for claiming that Curtis was not on notice of the possible penalties to which he was exposed, and Baril was not ineffective for failing to object to the sentence on this basis.

As for Curtis's argument about the standard of proof used at sentencing, it is true that, although the preponderance of the evidence standard is all that the sentencing guidelines require, in certain cases due process calls for a higher standard of proof, that of clear and convincing evidence.  *See United States v. Miner*, 127 F.3d 610, 614 (7th Cir. 1997).  "'A higher standard might be called for only in the rare instance where a factual finding will result in a sentencing increase so great that the sentencing hearing can fairly be characterized as a tail which wags the dog of the substantive offense.'" *United States v. Porter*, 23 F.3d 1274, 1277 (7th Cir. 1994) (quoting *United States v. Corbin*, 998 F.2d 1377, 1387 (7th Cir. 1993) (internal quotations omitted)).  Such a circumstance existed in the Third Circuit case of *United States v. Kikumura*, 918 F.2d 1084 (3d Cir. 1990), in which the Court departed upward from a guidelines

sentencing range of 23 to 33 months to impose a sentence of 30 years, and the Court found that the appropriate standard was clear and convincing evidence.  It did not exist, however, in *Porter*, where the defendant was convicted of distributing .55 grams of crack cocaine but was sentenced based on a relevant conduct of 13.6 grams.  In fact, the Seventh Circuit Court of Appeals has held repeatedly that a higher standard is generally not called for in relevant conduct drug determinations.  *Miner*, 127 F.3d at 614 (citing *United States v. Ewers*, 54 F.3d 419 (7th Cir. 1995));  *United States v. Johnson*, 32 F.3d 265, 268 n. 1 (7th Cir. 1994).

Curtis's case does not even come close to being the kind of extreme case for which the clear and convincing standard is required at sentencing.  For this reason, Baril was not deficient for failing to request the elevated standard of proof, and Curtis suffered no prejudice as a result.  In this case, Curtis was sentenced to the exact crimes for which he was convicted.  His allegation that count 1 involved less that one gram of crack cocaine is simply unfounded.  In addition, Curtis has pointed to no evidence showing that his relevant conduct was such a vast departure from his offense conduct that the proverbial tail was wagging the dog.  On the contrary, the evidence was overwhelming that the amount of drugs actually involved in the conspiracy not vastly different than the Court's relevant conduct finding.  In addition, Curtis's ultimate conviction fell well within his guideline range, so the sort of drastic upward departure at issue in *Kikumura* is not involved here.  For these reasons, the Court finds that Curtis cannot show that Baril was ineffective for failing to request a clear and convincing burden of proof.

For the foregoing reasons, the Court rejects completely Curtis's claim that he received ineffective assistance of counsel at sentencing.

C.   Appellate Counsel

For the following reasons, the Court finds that Hardy was not constitutionally ineffective in relation to Curtis's appeal.

18

1.     <u>Sufficiency of the Evidence (Ground 1)</u>

Curtis faults Hardy for failing to argue on appeal that there was insufficient evidence to support his conspiracy conviction.  He believes that, even viewing the evidence in the light most favorable to the government, there was insufficient evidence at trial to show that he agreed with others to sell drugs or did anything more than make a series of individual drug transactions, and that Hardy should have realized and argued this to the Court of Appeals.

The government argues that Hardy's decision not to pursue a sufficiency of the evidence argument on appeal was not outside the realm of professionally competent counsel.  It points to an October 22, 2001, letter from Hardy to Curtis in which Hardy explains,

> It is important to remember that even though you may worry about waiving an argument, putting extremely weak arguments in a brief will only distract the reviewing court and weaken the very strong arguments that you do make. . . .  I have considered [sufficiency of the evidence] as a possible issue for your case.  You expressed to me that you did not find that the evidence showed that the conspiracy included anything more than buy-sell transactions, or that it showed that you had a financial interest in the transactions.  I find this argument to be without merit.  The Government presented 19 witnesses who claimed that they bought drugs from you during the conspiracy dates.  Furthermore, circumstantial evidence can establish the conspiracy elements, and I do not think we want to go through each of the 19 witnesses in our brief and try and show how they did not establish the elements of a conspiracy.  <u>See</u> U.S. v . Clay, 37 F.3d 338 (7th Cir. 1994).  This argument is a non-starter, and would just remind the Court of how many witnesses the Government put on against you.  We should avoid going down that road.

The government also argues that Curtis suffered no prejudice from Hardy's failure to argue sufficiency of the evidence because overwhelming evidence supported Curtis's conspiracy conviction.

Appellate counsel is not deficient for failing to "raise every non-frivolous issue under the sun." *Mason v. Hanks,* 97 F.3d 887, 893 (7th Cir. 1996).  Counsel is only deficient if she "fails to appeal an issue that is both obvious and clearly stronger than one that was raised."  *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001) (citing *Williams v. Parke,* 133 F.3d 971, 974 (7th Cir. 1997)).  Furthermore, a petitioner can show prejudice from this deficiency only by demonstrating that the issue "may have resulted in a reversal of the conviction, or an order for a new trial."  *Mason*, 97 F.3d at 893.

Curtis has not made sufficient allegations to establish that Hardy was constitutionally deficient in her decision not to argue on appeal that the evidence was insufficient to support Curtis's conspiracy conviction.  As a preliminary matter, the Court notes that it is very difficult to prevail on a sufficiency of the evidence argument.  When considering such an argument, the Court of Appeals views the evidence in the light most favorable to the prosecution and will reject the argument if "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979));  *see United States v. Parra*, 402 F.3d 752, 760 (7th Cir. 2005).  It is clear from Hardy's October 22, 2001, letter that she appreciated the difficulty of prevailing on a sufficiency of the evidence argument, considered making the argument and rejected the idea because she thought it had little chance of success and that it would distract the Court of Appeals from more meritorious arguments.  Curtis has not pointed to anything that, considering the record as a whole, shows that such an argument was stronger than the ones Hardy chose to make on appeal or that may have resulted in a reversal or a new trial.  The Court has reviewed the entire transcript and finds that Hardy's decision was reasonable in light of the record, which contains overwhelming direct and circumstantial evidence from which a rational jury could have found Curtis guilty of the charged conspiracy.  A sufficiency of the evidence argument had almost no chance of success.  Thus, Hardy's decision not to pursue this argument was well within the range of professionally competent assistance and did not prejudice Curtis's case.

2.     Facts in Appellate Brief (Ground 2)

Curtis faults Hardy for misstating in the appellate brief several pieces of information.

a.     Number of Witnesses to Prior Bad Acts

Curtis believes Hardy misstated the number of witnesses who testified about Curtis's "prior bad acts" that occurred before the time frame of the conspiracy charged in count 1, August 1998 to May 5, 1999.  Hardy's brief indicated that four witnesses testified about Curtis's controlled buys as prior bad

acts, but Curtis contends that there were eleven witnesses who offered prior bad acts testimony. Apparently Curtis believes that had Hardy told the Court of Appeals that there were eleven witnesses who gave testimony that was admitted under Rule 404(b), the Court of Appeals would have determined that testimony of the seven missing from Hardy's brief was inadmissible under Rule 404(b) and would have vacated Curtis's conviction.

As a preliminary matter, the Court notes that Hardy's discussion of prior bad acts testimony was limited on its face to the four witnesses who testified specifically about controlled buys involving Curtis in 1997 and early 1998 and to three tapes of those transactions. There were only four such witnesses, and Hardy was not mistaken in her representation of the substance of their testimony. It is true, however, that there were other witnesses who testified about other of Curtis's prior bad acts, but none in such detail or length as the four witnesses Hardy named and none of which were supported by surveillance recordings. Hardy's brief in no way denied their existence, but instead focused on the four that gave the most detailed, substantial, well-supported, lengthy and damaging testimony. Curtis has not shown that Hardy's choice to focus on those witnesses, as opposed to the seven others Curtis names, was an unreasonable judgment call.

Furthermore, Curtis cannot demonstrate that he suffered any prejudice from Hardy's failure to include the seven other witnesses' statements in the appellate brief. In light of the overwhelming evidence against Curtis given by law enforcement officers and Curtis's coconspirators, there is simply no reasonable probability that Hardy's failure to discuss the seven prior bad acts witnesses in the appellate brief would have resulted in a reversal or a new trial. Furthermore, as discussed in Part III.A.1.a of this Memorandum and Order, the statements of the seven other witnesses were properly admitted under Rules 404(b) and 403 for the same reasons the Court of Appeals found that the four witnesses' statements were properly admitted – to show Curtis's intent to conspire to distribute crack cocaine. *See United States v. Curtis*, 280 F.3d 798, 802-03 (7th Cir. 2002). Thus, even if Hardy had included the argument on appeal,

it would not have been accepted by the Court of Appeals and would not have warranted reversal or a new trial.

        b.      Number of Witnesses to Conspiracy

Curtis also believes Hardy misstated the number of witnesses who testified about Curtis's activities during the time frame of the alleged conspiracy.  Hardy's brief indicated that thirteen government witnesses testified to purchasing crack cocaine from Curtis during the relevant time period, but Curtis believes only six witnesses gave such testimony.  This alleged instance of ineffective assistance of counsel simply has no merit.  The Court of Appeals had the trial transcript in front of it when it reviewed Curtis's case and was easily able to determine on its own which witnesses gave evidence in support of the conspiracy with which Curtis was charged.  Hardy's calculation, whether correct or not, of the number of such witnesses is simply of no import and could not have prejudiced Curtis's case.

        3.      Lester Barr Statement (Ground 7)

Curtis faults Hardy for failing to raise a *Brady/Giglio* claim on appeal because of the government's alleged failure to disclose Lester Barr's February 28, 2000, statement prior to trial.  Again, Curtis has failed to show that this argument was obvious and clearly stronger than the arguments Hardy chose to raise.  *See Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001).  As the Court has already noted in Part III.A.3, Barr's statement was not *Brady/Giglio* material, and arguing on appeal that it was would have been a waste of time and would have distracted from the stronger arguments Hardy did raise.  For this reason, the Court finds that Hardy was not deficient and that Curtis was not prejudiced by her choices not to raise this issue on appeal.

For the foregoing reasons, the Court rejects completely Curtis's claim that he received ineffective assistance of counsel on appeal.

D.     *Blakely*

In his supplement to his original § 2255 petition, Curtis argues that, in light of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), his sentence was improper because his relevant conduct and obstruction of justice enhancement were not found by a jury beyond a reasonable doubt.  He believes that because the jury only found him to have distributed .8 grams of crack cocaine, the amount involved in count 3, his base offense level should have been 16 and should not have been enhanced for obstruction of justice.  A base offense level of 16 in combination of a criminal history category II yields a sentencing range of 24 to 30 months.

The government argues that Curtis has made this argument too late, that he has procedurally defaulted on the argument and that, in any case, the argument has no merit.

At first blush, Curtis's *Blakely* argument has some appeal.  While at the time Curtis was tried the argument would have been soundly rejected, after *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), *judgment aff'd & remanded*, 125 S. Ct. 738 (2005), the legal landscape changed.  *Blakely* applied the principles set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to a Washington state sentencing scheme similar to the federal sentencing guidelines.  In *Blakely*, the defendant pled guilty to second-degree kidnaping, a class B felony that carried a standard sentencing range of 49 to 53 months.  *Blakely*, 124 S. Ct. at 2535.  In general, class B felonies in Washington could not be punished by prison sentences exceeding ten years.  *Id.*  The sentencing judge found that aggravating factors existed to justify an exceptional sentence of 90 months, still well within the permissible class B felony range but also well beyond the standard range for second-degree kidnaping. *Id.*  The Supreme Court held, however, that because the facts to which the defendant pled could only support a standard range sentence, *Apprendi* precluded the judge from making further findings to enhance the sentence, even if the sentence still fell within the class B felony range.  *Id*. at 2537-38.  In essence, the *Blakely* Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a

23

judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"  *Blakely,* 124 S. Ct. at 2537 (emphasis in original).  Therefore, because only the 49 to 53 month range was justified by the defendant's plea and any higher sentence was subject to reversal considering *only the facts admitted in the plea*, the defendant's sentence must fall within that range.  *Id.* at 2538.

1.     Timeliness

Section 2255, ¶ 6, requires a petitioner to make his claims, with some exceptions that do not apply here, within one year of when his conviction became final.  Curtis attempts to add this *Blakely* argument in his July 8, 2004, amendment, more than a year after his conviction became final on June 23, 2002, the day Curtis's time to file a petition for a writ of *certiorari* before the Supreme Court expired.  *Clay v. United States*, 537 U.S. 522, 524-25 (2003).  However, because Curtis's additional argument challenges the same sentence his original motion challenges, his additional argument relates back to the date of his original petition and is therefore timely.  *See Ellzey v. United States*, 324 F.3d 521, 526 (7th Cir. 2003); Fed. R. Civ. P. 15(c).

2.     Procedural Default

Although Curtis's *Blakely* argument is timely, he has procedurally defaulted it.  Curtis failed to argue on direct appeal that a jury must determine beyond a reasonable doubt the quantity of drugs that can be considered as relevant conduct and the obstruction of justice enhancement.  He certainly could have raised the issue on appeal, for the principles underlying that argument were established in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which was issued several months prior to Curtis's sentencing hearing.  Because he did not raise the argument, he has procedurally defaulted and can only raise the issue now if he can show cause for and prejudice from the failure to raise the issue on direct appeal or if he can show a fundamental miscarriage of justice.  He has done neither.  Curtis cannot show cause because "the novelty of a legal rule is *not* 'cause.'"  *See Garrott v. United States*, 238 F.3d 903, 906 (7th Cir. 2001) (emphasis

24

in original).  In fact, the basis for a *Blakely* argument existed prior to Curtis's case, although it would have been firmly rejected in the Seventh Circuit.  Curtis cannot show prejudice because he cannot show that no reasonable jury would have found the drugs ultimately found to be his relevant conduct.  *Id.*  For these reasons, the Court finds that Curtis has procedurally defaulted on his *Blakely* argument.

3.     Merits

Even if Curtis had not procedurally defaulted his *Blakely* argument, the Court would reject it.  To understand why, it is necessary to significant court decisions rendered after *Blakely*, namely, *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), and the Supreme Court's decision affirming and remanding that case, *United States v. Booker*, 125 S. Ct. 738 (2005).

In the lower *Booker* decision, the Seventh Circuit Court of Appeals applied *Blakely* to the federal sentencing guidelines system and held that (other than criminal history) only facts proven to a jury beyond a reasonable doubt or admitted by a defendant could be used to calculate a sentence under the guidelines.  *Booker*, 375 F.3d at 510-12.  The Supreme Court ultimately confirmed that *Blakely* applies to the federal sentencing guidelines and that application of the guidelines as written is unconstitutional because of their mandatory nature.  *United States v. Booker*, 125 S. Ct. 738, 746, 749-50 (2005).  However, the Supreme Court held that the proper remedial measure to save the guidelines is not to require that special findings be submitted to a jury.  *Id.* at 759-64.  The proper remedial measure, the Court decided, is to strike the portions of the Sentencing Reform Act of 1984 that make application of the guidelines mandatory as opposed to advisory:  18 U.S.C. §§ 3553(b)(1) and 3742(e).  *Id.* at 764-67.  Those provisions having been stricken from the Sentencing Reform Act, judges, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  *Id.* at 767;  *see* 18 U.S.C. § 3553(a)(4) & (5).

However, the Court of Appeals for the Seventh Circuit, which binds this Court to follow its precedent, has held that *United States v. Booker*, 125 S. Ct. 738 (2005), is not retroactively applicable on

collateral review. *McReynolds v. United States*, 397 F.3d 479, 480-81 (7th Cir. 2005); *see also Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002) (*Apprendi* does not apply retroactively on collateral review); *Schriro v. Summerlin*, 124 S. Ct. 2519, 2525-26 (2004) (holding that *Ring v. Arizona*, 536 U.S. 584 (2002), which relied on the same principles as *Apprendi*, does not apply retroactively on collateral review). For this reason, it is of no assistance to Curtis, and he is not entitled to § 2255 relief on that basis.

Because the "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief," 28 U.S.C. § 2255, the Court finds that no hearing is necessary and will deny Curtis's motions for a hearing (Docs. 5 & 22).

### IV.    Conclusion

For the foregoing reasons, the Court:

•        **GRANTS** the motion to expand the record (Doc. 4) to include the exhibit attached thereto;

•        **DENIES** Curtis's § 2255 motion (Doc. 1);

•        **DENIES** Curtis's motions for a hearing (Docs. 5 & 22); and

•        **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  May 9, 2005**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**